UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS MANUEL GARCES,<br><br>    Plaintiff,<br><br>    v.<br><br>M. GAMBOA, *et al.*<br><br>    Defendants. | Case No. 1:21-cv-00392-JLT-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS ALLISON, GAMBOA, AND BABB'S MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(ECF No. 214). |

Plaintiff Luis Manuel Garces is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. This case proceeds on Plaintiff's claims for excessive force in violation of the Eighth Amendment against Defendants Hernandez, Hubbard, Huerta, Cathey, Wolf, and Allison; Plaintiff's claims for deliberate indifference to a serious medical need in violation of the Eighth Amendment against Defendants Hernandez, Hubbard, Gill, Ibarra, Camacho, Aragon, Ramadan, and Boyd; and Plaintiff's claims for procedural due process in violation of the Fourteenth Amendment against Defendants Gamboa, Babb, and Sanders. (ECF No. 18 at 28; ECF No. 21 at 3; ECF No. 79 at 11; ECF No. 80).

On January 19, 2024, Defendants Allison, Gamboa, and Babb filed a motion for summary judgment on the grounds "that the undisputed facts establish that Defendants did not subject

1

Plaintiff to excessive force, violate his due process rights, or otherwise violate Plaintiff's constitutional rights in any way." (ECF No. 214 at 1). Defendants provided Plaintiff with the notice of the motion as required by *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998). (ECF No. 214-6). On March 13, 2024, Plaintiff filed an opposition to Defendants' motion.[1] (ECF No. 228). On March 20, 2024, Defendants lodged portions of Plaintiff's deposition testimony with the Court as an exhibit to their motion for summary judgment.[2] (ECF Nos. 233, 234). On March 26, 2024, Defendants filed a reply. (ECF No. 236). On May 1, 2024, Plaintiff filed a sur-reply. (ECF No. 249). On May 2, 2024, Defendants filed an objection to Plaintiff's sur-reply. (ECF No. 251).

For the following reasons, the Court will recommend that Defendants' motion for summary judgment be granted.

## I. BACKGROUND

### A. Summary Plaintiff's Third Amended Complaint[3]

In Plaintiff's Third Amended complaint, Plaintiff alleges that, on March 8, 2019, he asked Defendant Allison, who was acting as chairperson and D.R.B. director, to protect him from inmate gang members. (ECF No. 80 at 17). Plaintiff alleges that Defendant Allison was aware of Plaintiff's past safety concerns regarding the same gang but nevertheless denied Plaintiff's

---

[1] The Court granted Plaintiff's requests for an extension of the deadline to oppose Defendants' motion for summary judgment. (ECF Nos. 220, 224, 226).

[2] On January 4, 2024, Plaintiff filed a motion to strike Defendants' deposition of Plaintiff. (ECF No. 208). On March 14, 2024, the Court denied Plaintiff's motion "without prejudice to Plaintiff raising objections to the admission of the deposition into evidence at trial or as evidence submitted in support of summary judgment." (ECF No. 230 at 3). The Court subsequently requested that Defendants lodge the portions of Plaintiff's deposition transcript referenced in the instant motion for summary judgment with the Court pursuant to Local Rule 133(j). (ECF No. 231). Defendants lodged the deposition transcripts with the Court and submitted as an exhibit to Defendants' motion. (ECF Nos. 233, 234). Defendants also submitted a video recording of the deposition. (ECF No. 234). Plaintiff's opposition contends the deposition transcript was "wrongly translated" and asks the Court to order a second deposition. (ECF No. 228 at 41-41). Plaintiff provides no basis for his claim that his testimony was mistranslated. Plaintiff's objections to the deposition transcript are overruled, and his request is denied.

[3] After the Court authorized service on the claims found cognizable in Plaintiff's Second Amended Complaint, Plaintiff filed a motion to amend his complaint. (ECF No. 57). The Court granted Plaintiff's motion to amend and screened Plaintiff's proposed Third Amended Complaint. (ECF No. 79). The Court noted that Plaintiff's proposed TAC was largely identical to Plaintiff's SAC, aside from new allegations regarding the resolution of the state criminal case against Plaintiff. (*Id.* at 6). Thus, the Court did not re-screen the identical claims in the TAC already found cognizable in Plaintiff's SAC, and the Court refers the parties to its prior orders for a more detailed summary of Plaintiff's allegations. (*See* ECF No. 18 at 3-13; ECF No. 79 at 5-7).

2

request for protection and ordered Plaintiff be rehoused with his enemies on the 3B Yard at CSP-Corcoran. (*Id.* at 18). Plaintiff further alleges that Defendant Allison was aware that CSP-Corcoran has a policy and custom of officers' brutality against any inmate who complains about prison conditions and safety concerns. (*Id.*) Plaintiff alleges that Defendant Allison ordered CDCR offers to use excessive force on Plaintiff if he "kept insisting on safety concerns." (*Id.*)

Plaintiff was rehoused at CSP-Corcoran. On July 12, 2019, Plaintiff alleges that he approached an officer and requested protection. (*Id.* at 6). Plaintiff alleges that Defendants Cathey, Hubbard, Hernandez, Huerta, and Wolf attacked him during an interview regarding his security concerns. (*Id.* at 6-9).

Plaintiff further alleges that Defendants Hernandez and Hubbard did not call for medical treatment after the attack, and that once Plaintiff was taken to the medical clinic, medical clinic staff (Defendants Gill, Ibarra, Camacho, Argon, Ramadan, and Boyd) failed to administer prompt treatment, which worsened the severity of Plaintiff's injuries. (*Id.* at 28-33).

Plaintiff further alleges that he was placed in administrative segregation after the June 12 incident. (*Id.* at 23). Plaintiff alleges that on or around June 21, 2019, he was taken before the I.C.C. (*Id.*) Plaintiff alleges Defendant Gamboa and two other CDCR officials (Captain Gallagher and Captain Campa) told Plaintiff that he was placed in administrative segregation for assault on a peace officer. (*Id.* at 24).

Plaintiff alleges that he was told by Lieutenant Borrero and Sergeant Baroana during an interview regarding the June 12 incident that they did not have a 7219-injury report dated June 12, 2019.[4] (*Id.*)

Plaintiff alleges that on or around June 21, 2019, he was told that the case was referred to the prosecutor's office. (*Id.*) Plaintiff alleges that ten days later he put in a request to find out the substance of the charges against him, but the CSP-Corcoran IGI officer told Plaintiff that the case had not been referred. (*Id.*)

Plaintiff alleges that he was provided a copy of the complaint by his defense attorney on

---

[4] Plaintiff also alleges that Lieutenant Borrero and Sergeant Baraona asked 4 AR Regular Nurse Ms. Flores to fabricate a 7219 because they did not make one on June 12, 2019. (ECF No. 80 at 24). However, Plaintiff's Fourteenth Amendment claims do not proceed against these individuals.

3

1  March 11, 2020, at Hanford Superior Court. (*Id.* at 24). Plaintiff alleges that he discovered that
2  Defendant Babb and Defendant Sanders were responsible for the initial due process violation. (*Id.*
3  at 24-25).

4        Plaintiff alleges that Defendants Babb and Sanders coordinated with Defendant Gamboa
5  to retaliate against Plaintiff for asking for protection by altering and fabricating officer's reports
6  and injury reports to falsely accuse Plaintiff. (*Id.* at 25) Plaintiff alleges that Defendants Gamboa,
7  Babb, and Sanders intended to cover up the June 12 use of force incident and to interfere with any
8  future civil action. (*Id.*) Plaintiff alleges this altered and fabricated evidence was used as probable
9  cause to criminally prosecute Plaintiff. (*Id.*) Plaintiff alleges the criminal case resolved in
10  Plaintiff's favor when the judge entered a directed verdict dismissing all counts per Penal Code
11  1118 on June 24, 2022. (*Id.*)

    **B. Claims at Issue**

12        Defendants' motion for summary judgment challenges the following claims asserted in
13  Plaintiff's TAC: Plaintiff's claim for excessive force in violation of the Eighth Amendment
14  against Defendant Allison and Plaintiff's Fourteenth Amendment due process claim against
15  Defendants Babb and Gamboa.

16        Plaintiff's claim for excessive force against Defendant Allison proceeds on the theory that
17  she directed officers to assault Plaintiff. (ECF No. 80 at 18-19 ("Plaintiff was battered by
18  Kathleen Allison who[,] knowing the condition[,] made the order to the CDCR officials to use
19  force on Plaintiff if he ke[pt] insisting on safety concerns…Kathleen Allison made the order to
20  CDCR peace officers to batte[r] Plaintiff.")). Notably, the Court dismissed Plaintiff's failure to
21  protect claim against Defendant Allison, and Plaintiff's supervisory claim based on excessive
22  force.[5] (ECF No. 18 at 18-19). However, the Court found that Plaintiff stated a cognizable claim

---

[5] The Court notes Plaintiff's Second Amended Complaint alleged a supervisory liability claim for excessive force against other CDCR officials, including Defendants Gambo and Babb, as a separate claim from the excessive force claim alleged against Defendant Allison. (ECF No. 15 at 23-24). The Court recommended that the supervisory liability claim be dismissed because Plaintiff's allegations that those officials "generally knew of a policy of excessive force and denial of medical care" were "conclusory and not supported by any factual detail." (ECF No. 18 at 18). The Court's findings and recommendations regarding Plaintiff's SAC were adopted by the assigned district judge, who noted that although "plaintiff objects to the recommendation to dismiss the supervisory liability claim brought against defendant Allison . . . the magistrate judge recommended that plaintiff's Eighth Amendment claim against defendant Allison in fact be permitted to proceed." (ECF No. 21 at 2) (internal citations omitted). However, the Court did not

for excessive force against Defendant Allison based on his allegation that "Defendant Allison ordered the other Defendants to use force on Plaintiff." (ECF No. 18 at 15). Thus, the only claim now proceeding against Defendant Allison is based on Plaintiff's allegation that she personally directed officers to attack Plaintiff. (*See* ECF No. 12 at 14; ECF No. 15 at 19; ECF No. 21 at 2).

Plaintiff's procedural due process claim for deliberate fabrication of evidence against Defendants Gamboa and Babb proceeds on Plaintiff's allegations that Defendants Gamboa and Babb knowingly fabricated and altered evidence, including officer reports and medical reports, that was used as probable cause to criminally prosecute Plaintiff in a state court case that resolved in Plaintiff's favor.[6] (ECF No. 80 at 25).

## I. SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24; *see also Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) ("[S]ummary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial.").

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*

---

find that Plaintiff stated a cognizable claim for supervisory liability against Defendant Allison based on allegations that Defendant Allison knew of or otherwise implemented a policy or custom of excessive force. To the extent that Plaintiff's excessive force claim attempts to hold Defendant Allison liable as a supervisor, it must be based on Defendant Allison's own "personal involvement in the constitutional deprivation" alleged by Plaintiff. *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 624, 646 (9th Cir. 1989)) (describing ways in which a defendant may be held liable as a supervisor under § 1983).

[6] Plaintiff's declaration filed in support of his motion to amend also alleged that Defendants Gamboa, Babb and Sanders planted evidence of a boot print. (ECF No. 56 at 3). Defendants note that this is not in operative complaint, see ECF No. 236 at 5 n.2, and also contend that Plaintiff presents no evidence that "anyone planted evidence of a boot print." The Court agrees with Defendants and will not address this allegation further.

5

*Corp.*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010); *Celotex Corp.*, 477 U.S. at 323-24 (the moving party need not produce evidence which negates the opponent's claim). *See also* Fed. R. Civ. P. 56(c)(1) (a party asserting that a fact cannot be disputed, or is disputed, must support the assertion by "citing to particular parts of materials in the record. . .or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.").

If the moving party meets its burden with a properly supported motion, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Id.* (citing *Celotex Corp.*, 477 U.S. at 324). At that point, the non-moving party's burden "is not a light one." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322. Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the non-moving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). While "[t]he evidence of the non-movant is to be believed," *Anderson*, 477 U.S. at 255, the Court need only draw inferences where there is "evidence in the record. . .from which a reasonable inference. . .may be drawn," *Celotex*, 477 U.S. at 330 n. 2 (citation omitted). The Court need not entertain inferences that are supported by fact. *Celotex*, 477 U.S. at 330 n. 2 (citation omitted). In reviewing a summary judgment motion, the Court may consider other materials in the record not

cited to by the parties but is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

## II. DISCUSSION

### A. Rule 56(d) Motion

As an initial matter, Plaintiff's sur-reply asks this Court to postpone consideration of Defendants' motion for summary judgment, citing Rule 56[d][7], which permits a court to deny or defer considering a motion for summary judgment, allow additional discovery, or issue any other appropriate order if the nonmoving party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d).

Under Rule 56(d), a district court may postpone ruling on a summary judgment motion to allow for further discovery where the non-moving party needs "additional discovery to explore facts essential to justify the party's opposition." *Jones v. Blanas*, 393 F.3d 918, 930 (9th Cir. 2004). A Rule 56(d) affidavit must identify "the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006). "The failure to conduct discovery diligently is grounds for the denial of a [Rule 56(d)] motion." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1005 (9th Cir. 2002); *accord Long v. Playboy Enters. Int'l, Inc.*, 565 F. App'x 646, 648 (9th Cir. 2014) ("Failing to diligently pursue discovery in the past is sufficient reason to deny [a Rule 56(d) motion for] further discovery."). As the Ninth Circuit has repeatedly held, even *pro se* prisoners must pursue discovery in a diligent manner. *See McRae v. United States*, 812 F. App'x 505 (9th Cir. 2020) ("The district court did not abuse its discretion by denying [federal prisoner] McRae's requests for additional discovery pursuant to Fed. R. Civ. P. 56(d) and to continue summary judgment [in a case under the Federal Tort Claims Act] because McRae did not diligently pursue discovery during the time allotted by the district court.").

Plaintiff requests that the Court grant Plaintiff a continuance under Federal Rule of Civil Procedure 56 so that Plaintiff can gather the discovery he needs to oppose Defendants' motion for

---

[7] Plaintiff's sur-reply cites Rule 56(f). (ECF No. 249 at 15). However, subdivision (d) of Rule 56 "carries forward without substantial change the provisions of former subdivision (f)." Fed. R. Civ. P. 56 advisory committee's note to the 2010 amendment. Authorities citing former Rule 56(f) thus offer guidance to interpreting and applying Rule 56(d). When citing those authorities herein, the court will bracket Rule 56(f) as Rule 56([d]).

7

summary judgment. (ECF No. 249 at 15). Plaintiff argues that he needs to interview and subpoena all individuals who were at the DRB hearing, as well as Acting DRB Director Alfaro. (*Id.*) Plaintiff asks the Court to conduct an evidentiary hearing so that Plaintiff may identify Defendant Allison. (*Id.* at 17). Plaintiff also argues that Defendant Allison refuses to produce video footage of the March 15, 2019 DRB hearing and that Defendant Allison failed to "fairly answer" his interrogatory requests. (*Id.* at 2).

The Court recommends denying Plaintiff's motion because he has not established that he diligently sought this information during discovery. The Court issued a scheduling order in this case on October 27, 2022. (ECF No. 78). The Court's scheduling order provided that all discovery must be completed by August 24, 2023, more than six months before Plaintiff's current Rule 56(d) request. Plaintiff thus did not diligently pursue the discovery during the discovery period.

Plaintiff argues that he asked to subpoena IGI Salina and Ms. Ayon, who Plaintiff alleges attended the DRB hearing, but that this request was not "provided for." (ECF No. 249 at 13). However, Plaintiff's motion to subpoena these individuals was itself untimely. Moreover, the Court denied the motion in part because Plaintiff did not establish how the requested information was relevant to this case. (*Id.*)

In sum, Plaintiff has had ample time and opportunity to pursue the discovery he now seeks. Accordingly, the Court recommends denying Plaintiff's request for further discovery under Rule 56(d).

**III.     Excessive Force in Violation of the Eighth Amendment**

Defendants first move for summary judgment on Plaintiff's claim against Defendant Allison for excessive force in violation of the Eighth Amendment, which is based on Plaintiff's allegation that Defendant Allison ordered other Defendants to use excessive force against Plaintiff.

    **A.     Legal Standards**

To establish that a prison official used excessive force, an inmate must prove that the official applied force "maliciously and sadistically" for the purpose of inflicting pain, rather than in a "good faith effort to maintain or restore discipline." *Hudson v. McMillan*, 503 U.S. at 7; *see*

*also Whitley*, 475 U.S. at 320-321. "Although there is no pure *respondeat superior* liability under § 1983, a supervisor is liable for the acts of his subordinates if the supervisor participated in or directed the violations, or knew of the violations [of subordinates] and failed to act to prevent them." *Preschooler II v. Clark Cty. Sch. Bd. of Trustees*, 479 F.3d 1175, 1182 (9th Cir. 2007) (internal quotation marks and citation omitted).

### B. The Parties' Positions on Summary Judgment

#### i. Defendants' Motion

Defendants argue that Defendant Allison is entitled to summary judgment because she did not participate in the March 15, 2019 Department of Review Board (DRB) meeting regarding Plaintiff's safety concerns and placement at CSP-Corcoran. (*Id.* at 4-6). Defendants contend that Plaintiff's deposition testimony that Defendant Allison attended the March 15, 2019 DRB hearing is contradicted by the record because the DRB institutional chrono of the hearing, which Defendants submit in support of their motion, "clearly establishes that Allison was not present and did not participate in the proceedings." (*Id.* at 7-8).[8]

In support of their motion, Defendants submit Defendant Allison's declaration, which states that she did not personally participate or attend any DRB proceedings or communicate with any inmate (including Plaintiff) regarding their safety concerns or participation in the DRB process, and had no role in Plaintiff's classification, placement, or housing. (ECF No. 214-3). Defendant Allison also asserts that she "did not enter into any agreement or conspiracy to harm or mistreat Mr. Garces with any Defendant named in this matter, nor any other person, at any time." (*Id.* at 3). Defendant Allison's declaration includes as exhibits the classification chrono associated with Plaintiff's March 15, 2019 DRB hearing and the classification chrono associated with the ICC's October 12, 2018 decision to refer Plaintiff's case to DRB. (*Id.* at 4-15). According to Defendant Allison's declaration, the chrono indicates that "the following persons participated in the hearing: S. Alfaro, Acting Director and chairperson of the hearing; B. Moak, Chief of the Classification Services Unit, Correctional chairperson of the hearing . . . Correctional Counselor C. Vanenburg, and Staff Assistant and Interpreter E. Ayon-Flores." (*Id.* at 2-3). The chrono further indicates that the DRB elected to transfer Plaintiff to Corcoran Level IV housing, that the

---

[8] Defendants submitted a certified copy of Plaintiff's deposition testimony. (*See* ECF No. 234 at 5-9).

DRB retained transfer control over Plaintiff's case, and that Plaintiff agreed with the decision. (*Id.* at 3).

### ii. Plaintiff's Opposition

In opposition, Plaintiff contends that Defendant Allison is not entitled to summary judgment because her refusal to place Plaintiff at a safer institution or otherwise end Plaintiff's exposure to risk from STG II inmates and police brutality amounts to deliberate indifference to serious risk of harm. (*Id.* at 25).

Plaintiff also denies that Alfaro was the chairperson at the DRB meeting. (*Id.* at 36). Plaintiff further argues that Defendant Allison is not entitled to summary judgment because Defendants have not presented any evidence, such as the videotape or audio recording of the DRB hearing or witness testimony, that proves that Director Alfaro was present at the hearing or acted as chairperson. (*Id.* at 41). Plaintiff contends that Defendant Allison's declaration has no merit and that the chrono submitted in support of Defendants' motion is fabricated. (*Id.*)

In support of his opposition, Plaintiff attaches a copy of his inmate DRB action chrono. (*Id.* at 47-54). The chrono is dated March 8, 2019, and indicates that Plaintiff appeared before the DRB on March 15, 2019, via video-teleconference. (*Id.* at 47).

Plaintiff also submits his own declaration, signed under penalty of perjury, that on April 24, 2019, he was taken to CMC IGI for a videoconference with the DRB. (*Id.* at 55). Plaintiff asserts that IGI Sergeant Salina and IGI Ayon were designated to assist Plaintiff. (*Id.*) Plaintiff asserts that a member of the DRB told Plaintiff that she would be the one to present his case to the Director, but that the hearing would start late because the Director had not arrived yet. (*Id.* at 55-56). According to Plaintiff, around 15-20 minutes later, "a blond, good looking, white lady showed up and the black lady who was going to present the case started to introduce the DRB members and each one of them stated their name, including Ms. Allison." (*Id.*) Plaintiff asserts that he interacted with Defendant Allison during the hearing, which was videotaped by CMC ICC staff, and tape recorded by Sergeant Salinas and Ayon. (*Id.*)

Plaintiff's declaration also asserts that Defendant Allison allowed or gave prison officials unsupervised authorization to use force by any means to enforce the policy or custom. (*Id.* at 61).

10

### iii. Defendants' Reply

Defendants contend in reply that Plaintiff's sworn declaration that Defendant Allison was not at the meeting is blatantly contradicted by the DRB chrono records submitted by both Defendants and Plaintiff. (ECF No. 236 at 3). Further, Defendants argue that Plaintiff "does not provide any evidence that Allison instructed the other Defendant to use force on him, which is the basis of the excessive force claim asserted against her," or that any other Defendants were present at the DRB meeting. (*Id.*)

Defendants argue in reply that Plaintiff's opposition and supportive declaration only reference DRB proceedings that took place on April 24, 2019 and March 15, 2019, and thus, Plaintiff fails to present evidence that Defendant Allison was present at a March 8, 2019 DRB proceeding, as alleged in Plaintiff's complaint. (ECF No. 236 at 3). Defendants also argue that Plaintiff's contention that the relevant DRB meeting was recorded is incorrect and that "there is no available recording of this proceeding, other than the Departmental Review Board Action Chrono produced by Plaintiff demonstrating that Defendant Allison was not present at this proceeding." (*Id.* at 4) (citing ECF No. 228 at 54). In support, Defendants include the declaration of B. Moak, who states that he attended Plaintiff's March 15, 2019 DRB hearing, which was conducted by video-teleconference and not recorded by videotape or audiotape. (ECF No. 236-2 at 2-3).

### iv. Plaintiff's sur-reply

On May 1, 2024, Plaintiff filed a sur-reply. (ECF No. 249).[9]

Plaintiff's sur-reply notes that he was confused by the dates of DRB hearing because the DRB chrono that he received included two different dates. (ECF No. 249 at 3). Plaintiff agrees, however, that the relevant DRB hearing where it was decided that Plaintiff would be transferred to CSP-Corcoran took place on March 15, 2019. (*Id.*)

Plaintiff's sur-reply also denies Defendants' reply argument that Plaintiff has not

---

[9] On May 2, 2024, Defendants filed an objection to Plaintiff's sur-reply on the grounds that it violated Local Rule 230(m) because 1) Plaintiff did not seek permission to file a sur-reply; 2) the sur-reply does not object to any reply evidence; and 3) the sur-reply does not provide notice of supplemental authority. (ECF No. 251 at 1-2). In light of Plaintiff's *pro se* status, the Court finds it appropriate to consider Plaintiff's sur-reply to the extent that it clarifies Plaintiff's arguments made in opposition to Defendants' motion for summary judgment. *See Garcia v. Biter*, 195 F. Supp. 3d 1131, 1134 (E.D. Cal. 2016) (citations omitted) ("[D]istrict courts have the discretion to either permit or preclude a surreply.").

demonstrated that Defendant Allison made the order to other defendants to use force. (*Id.* at 11-12). Plaintiff points to the allegations in his complaint that Defendant Allison had knowledge of the police brutality and that she made the order to enforce housing at CSP-Corcoran. (*Id.* at 12). Plaintiff asserts that he was served with a transfer notice that ordered Plaintiff be housed "using force by any mean[s]." (*Id.*) According to Plaintiff's sur-reply, this notice was lost and Defendant's blocked discovery of such exculpatory documents. (*Id.*)

### C. Analysis of Excessive Force Claim

The Court finds that Defendants have presented undisputed evidence that Defendant Allison did not direct any defendant to use excessive force against Plaintiff at the DRB meeting that took place in March 2019, and thus Defendant Allison is not liable for the alleged force later used by Defendants Cathey, Hernandez, Hubbard, Huerta, and Wolf at CSP-Corcoran.

Putting aside the question of whether Plaintiff's declaration is sufficient to dispute whether Defendant Allison was even at the relevant meeting, Plaintiff has not presented any evidence that Defendant Allison directed any Defendant to use force against Plaintiff. Although Plaintiff alleges that Defendant Allison generally supported using force to implement classification decisions, Plaintiff does not make any specific allegation of using force against Plaintiff. Merely alleging that force may be used to implement prison orders does not allege a constitutional violation for excessive force.

Moreover, Plaintiff's evidence largely addresses different theories of liability than those allowed by the Court at screening based on Plaintiff's operative complaint, including that Defendant Allison failed to protect him by assigning him to a prison that included Plaintiff's enemies.

Thus, even assuming Plaintiff's facts as true, Plaintiff has not provided any evidence that Defendant Allison directly ordered Defendants Cathey, Hernandez, Huerta, and Wolf to use excessive force against Plaintiff during the March 2019 DRB hearing. Accordingly, the Court recommends granting Defendant Allison's motion for summary judgment. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (affirming summary judgment on Section 1983 claim based on plaintiff's failure to establish a genuine issue of material fact as to defendants' personal involvement in alleged constitutional violations).

**IV.    Deliberate Fabrication of Evidence in Violation of the Fourteenth Amendment**

Defendants next move for summary judgment on Plaintiff's claims against Defendants Gamboa and Babb based on Plaintiff's allegation that they knowingly fabricated and altered evidence that was used as probable cause to criminally prosecute Plaintiff in a state court case that resolved in Plaintiff's favor.

**A.    Legal Standards**

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In the criminal context, "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (en banc).

"To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017) (citations omitted). A plaintiff can prove deliberate fabrication in two ways:

> "Most basically, a plaintiff can produce direct evidence of deliberate fabrication." *Caldwell v. City & Cnty. of S.F.*, 889 F.3d 1105, 1112 (9th Cir. 2018). "Alternatively, a plaintiff can produce circumstantial evidence related to a defendant's motive." *Id.* To prove fabrication using circumstantial motive evidence, a plaintiff must establish that either: (a) "[d]efendants continued their investigation of [plaintiff] despite the fact that they knew or should have known that he was innocent"; or (b) "[d]efendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." *Devereaux*, 263 F.3d at 1076.

*Richards v. Cty. of San Bernardino*, 39 F.4th 562, 569 (9th Cir. 2022). If a plaintiff produces "direct evidence of deliberate fabrication, he [does] not have to prove that [defendant] knew or should have known that he was innocent." *Spencer v. Peters*, 857 F.3d 789, 799 (9th Cir. 2017); *see Caldwell v. City and County of San Francisco*, 889 F.3d 1105, 1114 (9th Cir. 2018) (discrepancies between witnesses account and investigative notes is one type of direct evidence of fabrication). As for the second element, "the plaintiff must show that (a) the act was the cause in fact of the deprivation of liberty, meaning that the injury would not have occurred in the absence of the conduct; and (b) the act was the 'proximate cause' or 'legal cause' of the injury, meaning

that the injury is of a type that a reasonable person would see as a likely result of the conduct in question." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017) (citations omitted).

### B. The Parties' Positions on Summary Judgment
#### i. Defendants' Motion

Defendants argue that the undisputed evidence shows that Defendants Babb and Gamboa had no role in the referral of criminal charges to the Kings County District Attorney regarding the June 12, 2019 incident. (ECF No. 214-1 at 8-9). Defendants further argue the undisputed evidence proves that Defendants Babb and Gamboa did not conspire with any person to submit false reports to the District Attorney or instruct others to fabricate evidence in any report. (*Id.*) Defendants contend that Plaintiff's deposition testimony that Defendant Babb ordered Defendant Cathey to falsify his report is contradicted by record evidence, which Defendants submit in support of their motion, and Defendant Babb's declaration asserting that he only requested clarification from Defendant Hubbard regarding the incident report. (*Id.* at 10) (citing ECF No. 208 at p. 47). Further, Defendants argue that Plaintiff's deposition testimony regarding Defendant Gamboa's involvement in the incident "fails to raise a genuine issue of material fact, as Plaintiff merely alleges that Gamboa presided over an institutional committee hearing in which Plaintiff did not have a copy of the incident report." (*Id.*)

In support, Defendants Babb and Gamboa submit declarations asserting that they were not involved in referring the matter for criminal prosecution and did not instruct correctional or medical staff to falsify, alter, or fabricate evidence in any report. (ECF Nos. 214-4, 214-5). Defendants Babb and Gamboa additionally assert that they did not "conspire, discuss, or coordinate" with other Defendants or any other person, to submit any false or misleading reports to the District Attorney. (*Id.*)

Defendant Gamboa further declares that he was not present during the June 12, 2019 incident and has no personal knowledge of the incident beyond his review of the incident report and Plaintiff's inmate appeal. (ECF No. 214-4 at 2). According to Defendant Gamboa's declaration, because he was Chief Deputy Warren at the time, he reviewed the incident report when he reviewed Plaintiff's inmate appeal. (*Id.*) Defendant Gamboa also asserts that he issued the institutional response to Plaintiff's inmate appeal and an amended institutional response. (*Id.*)

14

Defendant Babb also declares that he was not present during the June 12, 2019 incident and has no personal knowledge of the incident beyond his review of the incident report. (ECF No. 214-5 at 2). According to Defendant Babb, as part of his duties as Correctional Captain, he conducted a review of the relevant incident report, and as part of that review, he "directed Defendant Hubbard to clarify his report to how and by whom Plaintiff Garces was placed into a prone position." (*Id.*) Defendant Babb asserts this was the only request for clarification that he made in connection with his review of the incident report. (*Id.*) Defendant Babb's declaration includes as an exhibit the institutional request for clarification that he issued to Defendant Hubbard and the supplemental narrative supplied by Defendant Hubbard. (*Id.* at 5-9).

### ii. Plaintiff's Opposition

Plaintiff's opposition generally argues that that Defendants Babb and Gamboa violated his due process rights by conspiring to alter or fabricate the injury and officer reports related to the June 12 incident, or by otherwise approving the false reports prepared by Defendants Sanders, Hernandez, Hubbard, Wolf, and Cathey that Defendants Babb and Gamboa knew to be false.[10] (ECF No. 228 at 25-26).

Plaintiff asserts that, even though Defendant Gamboa was aware of all the due process violations, Defendant Gamboa "elected to act under their Green Wall/custom and made the order to prosecute Plaintiff, made the decision to keep Plaintiff under false imprisonment" and that Defendant Gamboa was aware of Plaintiff's staff complaints as he reviewed it and responded to it by "twisting Plaintiff's words." (*Id.* at 24). Plaintiff also contends that Defendant Babb acted as a "reviewer" who ordered others "to correct false statement with othe[r] created statement." (*Id.* at 39).

Plaintiff asserts that Defendants Babb and Gamboa knew of the following due process violations: 1) that "all 7219 injuries reports were altered/fabricated by the same staff wh[o] signed [Defendant] Hernandez's 837 report, [Defendant] Sanders report, and some other Report were

---

[10] Plaintiff's opposition also asserts that, even though CCR Title 15 prohibits adjudication of an RVR 115 "when dismissal result from a jury verdict or trial court during trial), Plaintiff has been charged with the 6/12/2019 RVR 115. (ECF No. 228 at 31). As an exhibit in support of Plaintiff's opposition, Plaintiff includes an inmate chrono dated February 22, 2024, that documents Plaintiff's Rules Violation Reports. (*Id.* at 45). The chrono indicates a final disposition that Plaintiff was found guilty as charged for the 6/12/2019 RVR. (*Id.*) Plaintiff's challenged to the documentation of his RVRs is not at issue in this case.

15

handwritten are identical to the one of those injuries report"; 2) that "[Defendant Babbs, Sanders, Hernandez, Hubbard, Wolf, and Cathey] coordinated themsel[ves] to fabricate injuries, to fabricate/or plant evidence of boo[t] prints at the back of the computer, that alter[ed] blood evidence by cleaning it off the floor, by not taking pictures of bruises at Plaintiff's neck, to clean the blood off Plaintiff's face; 3) that "subordinates did not activate the alarm, that none of them call[ed] for medical emergency assistance; and 4) that "Defendant Hernandez fabricated time of an interview." (*Id.* at 26).

Plaintiff asserts that Defendant Babb approved his subordinates' false reports and made the order to refer the case for possible prosecution. (*Id.* at 26). Plaintiff further asserts that Defendant Gamboa acted in coordination with Defendant Babb and in making the order to refer "their fabricated case to Prosecutor's office to be Prosecuted." (*Id.* at 30).

In support of his opposition, Plaintiff attaches a copy of the minutes from Plaintiff's continued criminal arraignment in Kings County Superior Court on March 11, 2020. (*Id.* at 43-44). The minutes reflect that a copy of the criminal complaint was tendered to Plaintiff and the complaint was read into the record. (*Id.* at 43). The minutes also reflect that Plaintiff was charged with assault by a life prisoner, battery on a non-confined person by a prisoner, resisting a peace officer that results in death/serious bodily injury, and resisting or deterring an executive officer. (*Id.* at 44). Plaintiff pled not guilty to all charges and denied all prior convictions. (*Id.*) [11]

Plaintiff's declaration attests to various interactions he had with Defendant Babb and Gamboa at institutional hearings regarding Plaintiff's safety concerns prior to the June 12 incident and Plaintiff's placement in administrative segregation following the June 12 incident. (*See id.* at 57-61). Specifically, Plaintiff asserts that he was taken to an ICC meeting on June 21, 2019, where Defendant Gamboa acted as chairperson. (*Id.* at 60). Plaintiff asserts that he told Defendant Gamboa that his due process rights were being violated but that Defendant Gamboa ignored his claims "and altered the 128.6 and all documents that came along with it to proceed to the next ICC." (*Id.*)

---

[11] Plaintiff's sur-reply attaches an incident report regarding the June 12, 20219 incident that appears to be signed by Defendant Sanders. (ECF No. 249 at 31-32). The second page of the report includes a notification that the incident would be referred to the Kings County District Attorney's Office "for possible Felony prosecution." (*Id.* at 32). However, this document does not demonstrate that Defendants Babb and Gamboa had any involvement in referring Plaintiff for criminal prosecution.

### iii. Defendants' Reply

Defendants further argue that Plaintiff has not provided any evidence that Defendant Gamboa altered CDC 128-G documents during an ICC meeting on June 21, 2019. (ECF No. 236 at 5). According to Defendant Gamboa's declaration filed in support of Defendants' reply, there was no ICC meeting on June 21, 2019. (ECF No. 236-3 at 2-3). Instead, Plaintiff's prison file indicates that an ICC meeting took place on June 20, 2019, but Defendant Gamboa was not in attendance. (*Id.*) Defendants also argue that Plaintiff's conclusory assertion that Defendant Babb signed false reports is inadmissible because Plaintiff fails to demonstrate that he has personal knowledge of this fact. (ECF No. 236 at 7-8).

Finally, Defendants argue that Plaintiff's arguments regarding Plaintiff's placement in administrative segregation and Defendants' alleged failure to protect Plaintiff in violation of the Eighth Amendment are irrelevant because there are no failure to protect claims proceeding against them. (*Id.* at 8).

### C. Analysis

Viewing all inferences in the light most favorable to Plaintiff, he has failed to point to any fact, aside from his own assertions that Defendants Babb approved a report that was fabricated, that supports his claim for deliberate fabrication of evidence against Defendants Gamboa and Babb. Indeed, Plaintiff does not provide any direct or circumstantial evidence tending to suggest the inference that the report was fabricated. While he points to his own declaration attesting to this, he does not have personal knowledge of this fact and thus his declaration does not contain any evidentiary weight. More importantly, Plaintiff has not presented evidence that supports the inference that the criminal charges against Plaintiff were based on fabricated evidence. Plaintiff has provided state court documents in support of his opposition, but these documents do not state the basis for the charges against Plaintiff.

Accordingly, the Court recommends granting Defendants Gamboa and Babb's motion for summary judgment.

\\\
\\\
\\\

17

## V. CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS RECOMMENDED that:

1. Plaintiff's request for further discovery under Rule 56(d) be DENIED.
2. Defendants Allison, Gamboa, and Babb's motion for summary judgment (ECF No. 214) be GRANTED.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **June 26, 2024**          /s/ Erica P. Grosjean
                                  UNITED STATES MAGISTRATE JUDGE