1

2

3

4

5

6

7

8                                    UNITED STATES DISTRICT COURT

9                                    EASTERN DISTRICT OF CALIFORNIA

10

11   LUIS MANUEL GARCES,                      Case No. 1:21-cv-00392-JLT-EPG (PC)

12                  Plaintiff,                 FINDINGS AND RECOMMENDATIONS
                                              FOLLOWING EVIDENTIARY HEARING,
13           v.                                RECOMMENDING THAT:

14   M. GAMBOA, et al.                         DEFENDANTS CAMACHO, IBARRA, GILL,
                                              ARAGON, RAMADAN, AND BOYD'S MOTION
15                  Defendants.                FOR SUMMARY JUDGMENT BE DENIED;

16
                                              DEFENDANTS' REQUEST FOR JUDICIAL
17                                             NOTICE BE GRANTED; and

18                                             PLAINTIFF'S CLAIMS AGAINST
                                              DEFENDANTS CAMACHO, IBARRA, GILL,
19                                             ARAGON, RAMADAN AND BOYD BE
                                              DISMISSED FOR FAILURE TO EXHAUST
20                                             AVAILABLE ADMINISTRATIVE REMEDIES.

21                                             (ECF Nos. 150 and 268)

22                                             OBJECTIONS, IF ANY, DUE WITHIN
                                              THIRTY DAYS
23

24           Plaintiff Luis Manuel Garces is a state prisoner proceeding *pro se* and *in forma pauperis*

25   in this civil rights action pursuant to 42 U.S.C. § 1983.[1] This case proceeds on Plaintiff's claims

26   for excessive force in violation of the Eighth Amendment against Defendants Hernandez,

27

28   _____
     [1] The operative complaint is Plaintiff's Third Amended Complaint. (ECF No. 80).

                                                    1

Hubbard, Huerta, Cathey, Wolf, and Allison; Plaintiff's claims for deliberate indifference to his serious medical needs in violation of the Eighth Amendment against Defendants Hernandez, Hubbard, Gill,[2] Ibarra, Camacho, Aragon, Ramadan, and Boyd; and Plaintiff's claims for procedural due process in violation of the Fourteenth Amendment against Defendants Gamboa, Babb, and Sanders. (ECF No. 18 at 28; ECF No. 21 at 3; ECF No. 79 at 11; ECF No. 80).

On June 7, 2023, Defendants Camacho, Ibarra, Gill, Aragon, Ramadan, and Boyd ("Medical Staff Defendants")[3] filed a motion for summary judgment on the basis that Plaintiff failed to exhaust his available administrative remedies as to his Eighth Amendment claims against the Medical Staff Defendants for deliberate indifference to his serious medical needs. (ECF No. 150). On November 27, 2023, the Court issued findings and recommendations to deny the motion for summary judgment because there was a genuine dispute of material fact as to whether Plaintiff timely filed a grievance regarding his claims against the Medical Staff Defendants. (ECF No. 191). The Court further recommended that an evidentiary hearing be set to resolve the dispute in accordance with Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014). (ECF No. 191 at 14). On March 18, 2024, the District Judge adopted the findings and recommendations, and referred the matter for an evidentiary hearing to determine whether Plaintiff exhausted his administrative remedies as to his Eighth Amendment claims against the Medical Staff Defendants. (ECF No. 232).[4] On May 28, 2024, the Court conducted the evidentiary hearing. (ECF No. 276). After the evidentiary hearing, Defendants filed a request for judicial notice (ECF No. 268), which Plaintiff opposes (ECF No. 280).

For the reasons that follow, the Court reiterates its Findings and Recommendations (ECF No. 191) to deny the Medical Staff Defendants' motion for summary judgment (ECF No. 150) due to a genuine dispute of material fact. However, the Court now also recommends granting

---

[2] Plaintiff incorrectly identified this defendant as "Gill Ravijot" in the Third Amended Complaint. (ECF No. 80 at 2). Defendants have clarified that this defendant's name is "Ravijot Gill." (See ECF No. 150).

[3] The motion does not challenge Plaintiff's claims against Defendants Gamboa, Hubbard, Allison, Huerta, Sanders, Cathey, Hernandez, Babb, and Wolf as they relate to the exhaustion of administrative remedies, including Plaintiff's Eighth Amendment claims for deliberate indifference to a serious medical need against Defendants Hernandez and Hubbard. (See ECF No. 150-1 at 2 n.1).

[4] The Court notes that the order adopting the findings and recommendations has a scrivener's error for the docket number associated with the findings and recommendations. (See ECF No. 232 at 2 (identifying findings and recommendations as "Doc. 49" instead of "Doc. 191")).

Defendants' request for judicial notice and finding, based on the evidence presented at the hearing, that Plaintiff's Eighth Amendment claims against the Medical Staff Defendants should be dismissed without prejudice because he failed to exhaust his available administrative remedies as to these claims.

## I.  BACKGROUND

The Court refers to its earlier findings and recommendations for a detailed summary of Plaintiff's allegations in this case and the Medical Staff Defendants' motion for summary judgment. (ECF No. 191; ECF No. 279 at 2). Briefly, Plaintiff's Eighth Amendment claims against the Medical Staff Defendants are based on his allegations that the Medical Staff Defendants failed to provide him with emergency assistance or treat his injuries following a use of force incident that took place at Corcoran State Prison ("CSP-Corcoran") on June 12, 2019. (See ECF No. 80). Plaintiff asserts that the Medical Staff Defendants knew he needed medical attention after the incident, but failed to administer prompt treatment or otherwise prevented him from receiving prompt treatment. (Id. at 28–33). He alleges that the lack of timely treatment worsened the severity of his injuries. (Id.)

In the prior findings and recommendations (ECF No. 191) issued on the Medical Staff Defendants' motion for summary judgment, the Court found the following facts are undisputed:

1. The alleged constitutional violations giving rise to Plaintiff's claims against the Medical Staff Defendants took place on June 12, 2019. (ECF No. 150-3 at 2; ECF No. 80 at 6, 29).

2. There was a generally available administrative remedy. (ECF No. 150-3 at 3–4; ECF No. 163 at 32–38).

3. Plaintiff knew about and used the administrative grievance process, including advancing appeals to the final level of review. (ECF No. 150-3 at 4–6; ECF No. 163 at 32–38).

4. Between June 12, 2019 and March 12, 2021, Plaintiff submitted five health care grievances. (ECF No. 150-3 at 4–6; ECF No. 163 at 32–38).

5. The above-listed appeals did not address Plaintiff's medical deliberate indifference allegations against the Medical Staff Defendants for a failure to provide treatment on

1    June 12, 2019, or did not receive a final disposition at the headquarters' level. (ECF

2    No. 150-3 at 4–6; ECF No. 163 at 32–38).

3    6.   Plaintiff did not receive a final disposition at the headquarters' level for a grievance

4    regarding the failure to provide treatment on June 12, 2019. (ECF No. 150-3 at 4-6;

5    ECF No. 163 at 32–38).

6    (ECF No. 191 at 11–12).

7    In light of the above undisputed facts, the Court found that "it is undisputed that there was

8    a generally available administrative remedy and that Plaintiff did not receive a disposition at the

9    headquarters' level of review to any grievance he filed regarding his deliberate indifference claim

10   as to the Medical Staff Defendants." (Id. at 12). The burden then shifted to Plaintiff to come

11   forward "with evidence showing that there is something in his particular case that made the

12   existing and generally available administrative remedies effectively unavailable to him." Albino,

13   747 F.3d at 1172. Here, the Court determined that a genuine dispute of material fact exists as to

14   whether Plaintiff exhausted his administrative remedies based on Plaintiff's submission of: (1) his

15   declaration stating that he submitted a California Department of Corrections and Rehabilitation

16   ("CDCR") Form 602 HC on June 19, 2019 regarding the denial of medical treatment after the use

17   of force incident; and (2) a "copy of the 602-HC form . . . that he was able to make off some

18   'scraping paper.'" (Id. at 12). Considering this factual dispute, the Court recommended that the

19   Medical Staff Defendants' motion for summary judgment be denied, and that an Albino hearing

20   be set to determine whether Plaintiff exhausted his administrative remedies as to his Eighth

21   Amendment claims against the Medical Staff Defendants. See Albino, 747 F.3d at 1168 ("If

22   summary judgment is not appropriate, the district judge may decide disputed questions of fact in a

23   preliminary proceeding.").

24   On March 15, 2024, the Court adopted the findings and recommendations in full, and

25   referred the matter for "an evidentiary hearing to determine whether Plaintiff exhausted his

26   administrative remedies." (ECF No. 232 at 2).

27   On May 28, 2024, the Court conducted the evidentiary hearing. (ECF No. 276). The

28   Medical Staff Defendants called the following witnesses during the hearing: Sara Gates, Ryan

Laber, Evie Jarvis, Anamaria Ybarra, and Priscilla Williams. Plaintiff testified on his own behalf.

1    After the hearing, the Medical Staff Defendants filed a closing brief, to which Plaintiff filed a

2    response. (ECF Nos. 278, 282). Defendants[5] also filed a request for judicial notice (ECF No.

3    268), and Plaintiff filed a response in opposition (ECF No. 280).

4    **II.    EVIDENTIARY HEARING**

5        **A.    Exhibits**

6        At the evidentiary hearing, the Medical Staff Defendants entered the following documents

7    into evidence: a copy and photograph of the appeals office log for the week of June 17, 2019

8    (Defs. Exhibit 1 and Defs. Exhibit 7); a printout showing bed history for Facility 4A on June 19

9    and 20, 2019 (Defs. Exhibit 2); a CDCR Form 602 HC grievance labeled "My Copy" and dated

10   June 19, 2019 (Defs. Exhibit 3)[6]; Plaintiff's declaration (Defs. Exhibit 5)[7]; a log showing

11   Plaintiff's grievance history from October 2017 to October 2021 (Defs. Exhibit 6 pgs. 2–10,

12   hereinafter "Defs. Exhibit 6A")[8]; a CDCR Form 22 submitted on December 8, 2019 (Defs.

13   Exhibit 6 pg. 117, hereinafter "Defs. Exhibit 6B")[9]; and a CDCR Form 22 submitted on June 30,

14   2019 (Defs. Exhibit 8).[10]

15       Plaintiff entered the following documents into evidence: institutional level health care

16   grievance records from 2019 (Plaintiff's Exhibit 4); grievance records from 2022 while Plaintiff

17   was housed at Kern Valley State Prison (Plaintiff's Exhibit 5); and health care grievance records

18   from 2019 and 2020 (Plaintiff's Exhibit 6A).[11] (See ECF No. 264 at 13–31, 33–45, 47–61).

19       **B.    Plaintiff's Testimony**

20       Plaintiff testified on his own behalf. (ECF No. 276 at 80–116). Plaintiff testified that he

21   was generally familiar with the process for submitting health care grievances at CSP-Corcoran,

22   but he was in restricted housing and did not have access to grievance forms after the June 12,

---

[5] The Court notes that the Medical Staff Defendants initially made the request for judicial notice during the evidentiary hearing. (ECF No. 276 at 116). The Court directed the Medical Staff Defendants to file a written request for judicial notice. (ECF No. 267). The subsequent written request for judicial notice (ECF No. 268) was filed on behalf of all Defendants.

[6] See ECF No. 163 at 28–29.

[7] See ECF No. 163 at 59–63.

[8] See ECF No. 150-5 at 2–10.

[9] See ECF No. 150-5 at 117.

[10] See ECF No. 27 at 22.

[11] For the reasons stated on the record, Plaintiff's remaining exhibits were not admitted into evidence. (ECF No. 276 at 133–40).

2019 incident. (<u>Id.</u> at 81–83, 103–04). Plaintiff stated that he later told another inmate, whom he initially identified as "Herrera Parjaro," about the use of force incident while they were both getting haircuts. (<u>Id.</u> at 88–89). According to Plaintiff, Parjaro had access to blank grievance forms, and he agreed to fill out a health care grievance form for Plaintiff. (<u>Id.</u>) Plaintiff explained that he and Parjaro sent "kites . . . through the lines" to communicate with each other while Parjaro filled out the grievance form. (<u>Id.</u>) Plaintiff described the process as follows:

| | |
|---|---|
| Plaintiff: | We're talking – we're talking in the barber – this the cages where they put you together, you know, the barber haircut. And we was talking. I explained to him everything. And then he go by that. We send the kites and all that through the lines. |
| Defs. counsel: | All right. So then when you say through the lines, what do you mean by that? |
| Plaintiff: | The line. You tie a little piece of soap, and then you shoot the line all the way to the other cells. He was in Cell 24, other side of the chow. |
| Defs. counsel: | Okay. And so, and then the other inmate took what you had written down on the scrap of paper and filled out the form, right? |
| Plaintiff: | Yeah. We communicated through – |
| Defs. counsel: | Okay. |
| Plaintiff: | -- through that, yeah. |

(<u>Id.</u> at 89–90).

Later in his testimony, Plaintiff named "Rodriguez Moreno" as the inmate who filled out the health care grievance form for him. (<u>Id.</u> at 104). Plaintiff explained that Rodriguez Moreno's nickname was Parjaro. (<u>Id.</u> at 112–13). In response to questioning by the Court, Plaintiff testified:

| | |
|---|---|
| Court: | Who's the name of the person you said helped you? |
| Plaintiff: | Rodriguez, Moreno. |
| Court: | Okay. Okay. |
| Plaintiff: | And he's an active – he don't – he just doing – whatever he do, he have to do on the – you know, on the quadrant because he's active position for the |

6

| | | |
|---|---|---|
| 1 | | gang that he was claiming to. And then he's the one |
| 2 | | help me to get the form figured out. And with his handwriting, and I submit it. In 2019, the officer |
| 3 | | passing by and pick it up. |
| 4 | Court: | Pause for a little. I'm going to – I want to understand. So you saw Mr. Rodriguez. And how |
| 5 | | did you get him information that you say went on |
| 6 | | this form? |
| 7 | Plaintiff: | Yeah. We was talking about – I was talking to him and he say he going to help me, you know, with the |
| 8 | | handwriting and clean it up, you know, with the – with the writing. |
| 9 | | |
| 10 | Court: | Okay. And then did you write him something to put on the form, or did you talk to him? |
| 11 | Plaintiff: | No. I write – yeah. We – we talking in the haircut |
| 12 | | and then we (indiscernible) you know, two lines connect each other, and then we writing – I writing |
| 13 | | down what happened, you know, everything. And he help me to write the -- the 602. |
| 14 | | |
| 15 | Court: | Okay. So you write something on a piece of paper, and then you sent it through the line to Mr. |
| 16 | | Rodriguez? |
| 17 | Plaintiff: | To Rodriguez. And then he do the 602 for me. |
| 18 | Court: | Okay. And then Mr. Rodriguez writes a 602. And |
| 19 | | then does he -- |
| 20 | Plaintiff: | Yes. |
| 21 | Court: | -- send it back to you? |
| 22 | Plaintiff: | Yeah. He sent it back to me. And then I asking him |
| 23 | | for scrap paper. And they issue me the scrap paper. |
| 24 | Court: | . . . So he comes – he sends you something back |
| 25 | | that's a filled-out 602? |
| 26 | Plaintiff: | He show me the original 602, yeah, filled it out with the -- with the handwriting. |
| 27 | | |

(Id. at 104–05). After signing the form, Plaintiff testified that he placed it in his door and a third

| 28 | |

7

watch officer later picked up the grievance. (Id. at 105, 108). Plaintiff testified that he was not interviewed regarding the grievance, nor was the grievance ever returned to him. (Id. at 99).

Plaintiff testified that he also created his own copy of the above health care grievance. Plaintiff stated that Parjaro sent him a "scrap" grievance form with some writing already on it. (Id. at 88, 107). Plaintiff scratched out the writing, labeled the scrap form as "My Copy," and then copied what was on the health care grievance to the scrap form. Plaintiff identified the copy he created as Defs. Exhibit 3. Plaintiff testified that Defs. Exhibit 3 has "almost the same words" as the health care grievance form that he submitted during third watch on June 19, 2019. (Id. at 106–07). Plaintiff admitted that he made an error in the dates provided in Defs. Exhibit 3—specifically, the document states he was denied medical treatment on June 12, 2022, instead of June 12, 2019. (Id. at 91–92).

Finally, Plaintiff identified Defs. Exhibit 8 as a CDCR Form 22 that he submitted on June 30, 2019, regarding the use of force incident. (Id. at 85–86). Plaintiff testified that he was still in restricted housing on June 30, 2019, and that inmate "Manuel Rodriguez" provided him with the form. (Id.)

### C.  Sara Gates' Testimony

The Medical Staff Defendants first called Sara Gates to testify.[12] (ECF No. 276 at 6–33). Since 2017, Ms. Gates has been employed by California Correctional Health Care Services ("CCHCS") as the Chief of the Health Care Correspondence and Appeals Branch ("HCCAB"), which provides oversight of the health care grievance process. (Id. at 7, 25–26). Ms. Gates testified that during the relevant time period in 2019, an inmate initiated the health care grievance process at the institutional level by completing a CDCR Form 602 HC and submitting it to the health care grievance office at the institution where the inmate was housed. (Id. at 7–8). The CDCR Form 602 HC was processed at the institutional level and a response was returned to the inmate. (Id.) If the inmate was dissatisfied with the institutional level response, the inmate could pursue an appeal at the headquarters level, which would be handled by the HCCAB. (Id. at 8). Ms. Gates testified that a disposition at the headquarters level would exhaust the inmate's

---

[12] The Medical Staff Defendants also offered Ms. Gates' declaration in support of their motion for summary judgment (ECF No. 150-4). For the reasons stated on the record, the declaration was not admitted into evidence. (ECF No. 276 at 9–10).

1    administrative remedies. (Id.)

2            According to Ms. Gates, CCHCS tracks the submission and processing of health care

3    grievances through a computer database known as the Health Care Appeals and Risk Tracking

4    System (HCARTS). (Id. at 8). In relation to this case, Ms. Gates testified that she searched

5    HCARTS for Plaintiff's health care grievance records. (Id. at 15). Ms. Gates authenticated Defs.

6    Exhibit 6A, which she identified as a log of Plaintiff's health care grievance history in HCARTS

7    from 2017 to 2022. (Id. at 13–15). Based on her review, Ms. Gates testified that there is no record

8    in HCARTS of the health care grievance Plaintiff claims to have submitted on June 19, 2019. (Id.

9    at 24–25). Nor was there any record in the HCARTS of the "copy"—i.e., Defs. Exhibit 3—that

10   Plaintiff testified he made of the June 19, 2019 health care grievance. (Id. at 19–20). As to the

11   copy (Defs. Exhibit 3), Ms. Gates noted that there was "no indication [on the document] that the

12   health care grievance office ever got it. There's no scan, there's no tracking number, there's

13   nothing on it that indicates any staff had ever touched it." (Id. at 20). Ms. Gates also pointed out

14   the date discrepancy in Defs. Exhibit 3—specifically, that Plaintiff wrote June 19, 2019, as the

15   date he was submitting the grievance, but listed June 12, 2022, as the date he was denied medical

16   services. (Id. at 22).

17          Ms. Gates also authenticated Defs. Exhibit 6B, which is a CDCR Form 22 for a health

18   care grievance Plaintiff submitted on December 8, 2019. (Id. at 23).

19          **D.    Ryan Laber's Testimony**

20          The Medical Staff Defendants next called Ryan Laber to testify. (ECF No. 276 at 33–46).

21   In June 2019, Mr. Laber was employed as a Captain's Secretary at CSP-Corcoran. (Id. at 34). Mr.

22   Laber testified that his daily job duties included collecting grievances from each pod in Facility

23   4A and delivering them to the appeals office[13] at CSP-Corcoran. (Id. at 34–36, 42). Mr. Laber

24   stated that he used a key to access locked collection boxes in each pod, retrieved the grievance

25   forms, counted them, and then recorded the number of forms collected as well as the time of

26   collection in a logbook located in the rotunda. (Id.) Mr. Laber explained that he did not read the

27   grievances; rather, he "would simply check to see how many" were received and log the total

28   _____

[13] Mr. Laber used "appeals office" and "grievance office" interchangeably throughout his testimony. See
ECF No. 276 at 36–37.

amount in the book. (Id. at 35). Mr. Laber then delivered the forms to the grievance office at the institution, where he signed another logbook. (Id. at 36). In that logbook, Mr. Laber noted the time of delivery, the number of forms that were delivered, and the facility the items came from. (Id.)

Mr. Laber testified that he would have picked up any grievances submitted during third watch on June 19, 2019, on the morning of June 20, 2019. (Id. at 37–38). Mr. Laber reviewed Defs. Exhibits 1 and 7, which show the grievance office log for the week of June 17, 2019. Mr. Laber testified that the log shows he delivered ten items to the grievance office at 10:53 a.m. on June 20, 2019. (Id. at 38). Mr. Laber confirmed that if a health care grievance had been placed in a locked collection box in Facility 4A during third watch on June 19, 2019, he would have picked it up and logged it "as an item" in the grievance office log, but he "would not have specified what [type of grievance] it was." (Id. at 45).

### E.    Evie Jarvis' Testimony

The Medical Staff Defendants next called Evie Jarvis to testify. (ECF No. 276 at 47–53). Ms. Jarvis testified that she was employed as an office technician in the inmate appeals office at CSP-Corcoran in June 2019. (Id. at 47). As part of her job duties, Ms. Jarvis took the grievance forms that were dropped off by the captain's secretaries and sorted them by type. (Id. at 47–48, 52). With respect to health care grievance forms in particular, Ms. Jarvis testified that she would place all health care grievances in an envelope to be picked up by "someone from health care."[14] (Id. at 48). Ms. Jarvis stated that she never rejected, or otherwise disposed of, any health care grievances that were brought in by the captain's secretaries. (Id. at 48, 51–52).

### F.    Anamaria Ybarra's Testimony

The Medical Staff Defendants next called Anamaria Ybarra to testify. (ECF No. 276 at 53–65). Ms. Ybarra testified that she was working as a health care grievance coordinator in the health care grievance office at CSP-Corcoran in June 2019. (Id. at 53). Her duties generally consisted of "[s]creening, processing, [and] issuing responses" to health care grievances. (Id.) Ms. Ybarra described the processing of health care grievances as follows:

---

[14] Another defense witness, Anamaria Ybarra, testified that the forms were either picked up by the office technician in the health care grievance office or by health records office staff. (ECF No. 276 at 54).

| | | |
|---|---|---|
| Q: | . . . And then once a health care grievance was received by the healthcare grievance office, then what was – what was done with it? |
| A: | We would start the process. We would put it into our HCART system. And when it's put into the system, it's given a log number. Our office date stamps it. And the date is also generated when we open up the record. And so that would be the initial process. We would just put it into the HCART system. |
| | The office technician would be tasked with that, and they would put that into the system. They would read it and put one issue in. And then it would be forwarded to our RN to triage for any urgent or emergent issues. |
| Q: | All right. And then, assuming that there were no urgent or emergent issues, what would be the next step in the process? |
| A: | The next step, it would come to me to screen. And so in the screening process, I would read the full grievance. I would break down the issues. If there were multiple, then they would each have their own individual issue. And then at that time, it would be decided whether we were going to move forward with processing or if it would be rejected. That's when that would be determined, during the screening process. |

(Id. at 54–55). Ms. Ybarra testified that if an inmate submitted a health care grievance on an outdated version of a grievance form, the grievance office's practice was not to reject the grievance, but to add the new version of the form on top and continue processing the grievance. (Id. at 59–62).

Ms. Ybarra testified she found no record in HCARTS of the health care grievance Plaintiff claims to have submitted on June 19, 2019. (Id. at 58). Nor did she find anything in the database indicating that the alleged June 19, 2019 health care grievance was submitted on an outdated form and subsequently rejected for that reason. (Id. at 59).

### G. Priscilla Williams' Testimony

The Medical Staff Defendants' final witness was Priscilla Williams, who testified that she was the appeals coordinator at CSP-Corcoran in June 2019. (ECF No. 276 at 65–79). Ms. Williams testified that at that time, inmates housed in security housing units ("SHUs") at CSP-Corcoran could obtain grievance forms from officers while they were doing rounds, health care

11

staff while they were doing medical rounds, and/or any other available staff member. (Id. at 66–67).

Ms. Williams testified that she conducted a "bed history search" for every inmate housed in Facility 4A in June 2019. (Id. at 67). She authenticated Defs. Exhibit 2, which she identified as a printout of the bed history for Facility 4A on the dates of June 18, 2019 through June 20, 2019. (Id. at 67–69). Ms. Williams testified that there were no inmates by the name of "A.K. Parjaro" or "Roberto Herrera" in the printout. (Id. at 70–71). She testified that an inmate by the name of "Manuel Moreno Rodriquez" was housed in cell number 24 from May 14, 2019 to July 31, 2019. (Id. at 75–79).

III.    POST-HEARING BRIEFING

After the evidentiary hearing, the Court permitted the parties to submit briefs addressing the evidence presented at the evidentiary hearing. (ECF No. 267). In their closing brief, the Medical Staff Defendants argue that the evidence establishes the administrative grievance process was available to Plaintiff, but that he failed to file a health care grievance regarding the denial of medical treatment after the June 12, 2019 incident. (ECF No. 278 at 1–4). The Medical Staff Defendants also argue that Plaintiff's hearing testimony was inconsistent and lacked credibility. (Id. at 4–6).

Plaintiff did not file a closing brief. However, on July 23, 2024, Plaintiff filed a response to the Medical Staff Defendants' closing brief. (ECF No. 282). In his response, Plaintiff reasserts that the Medical Staff Defendants failed to meet their burden of proof to show that he did not submit a health care grievance on June 19, 2019.

IV.    DEFENDANTS' REQUEST FOR JUDICIAL NOTICE (ECF No. 268)

As a preliminary matter, the Court addresses Defendants' request for judicial notice. In his declaration and his hearing testimony, Plaintiff states that he submitted his alleged copy of the June 19, 2019 health care grievance—i.e., Defs. Exhibit 3—with his original complaint and his amended complaints. (ECF No. 276 at 97–103; Defs. Exhibit 5). In their request for judicial notice, Defendants ask the Court to take judicial notice that Defs. Exhibit 3 was "not included in either the complaint (ECF No. 1), first amended complaint (ECF No. 11), second amended complaint (ECF No. 15), or third amended complaint (ECF No. 80), nor the exhibits filed by the

12

1   Plaintiff[] (ECF No. 27.)." (ECF No. 268 at 1–2). Plaintiff opposes Defendants' request for

2   judicial notice. (ECF No. 280).

3       The Court may take judicial notice of "a fact that is not subject to reasonable dispute

4   because it . . . can be accurately and readily determined from sources whose accuracy cannot

5   reasonably be questioned." Fed. R. Evid. 201(b)(2). Generally, a court "may take judicial notice

6   of court filings and other matters of public record." See Reyn's Pasta Bella, LLC v. Visa USA,

7   Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2016).

8       The Court will therefore grant Defendants' request and take judicial notice that Plaintiff

9   did not submit Defs. Exhibit 3 with his original complaint or his subsequent amended complaints.

10  **V.    ANALYSIS**

11      **A.    Applicable Legal Standards**

12      Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that

13  "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any

14  other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

    such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

15      Prisoners are required to exhaust the available administrative remedies prior to filing suit.

16  Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199–1201 (9th

17  Cir. 2002) (per curiam). The exhaustion requirement applies to all prisoner suits relating to prison

18  life. Porter v. Nussle, 534 U.S. 516, 532 (2002). Exhaustion is required regardless of the relief

19  sought by the prisoner and regardless of the relief offered by the process, unless "the relevant

20  administrative procedure lacks authority to provide any relief or to take any action whatsoever in

21  response to a complaint." Booth v. Churner, 532 U.S. 731, 736, 741 (2001); Ross v. Blake, 578

22  U.S. 632, 640, 642 (2016).

23      There are no "special circumstances" exceptions to the exhaustion requirement. Ross, 578

24  U.S. 648. The one significant qualifier is that "the remedies must indeed be 'available' to the

25  prisoner." Id. at 639. "The Supreme Court has identified three examples of circumstances in

26  which administrative remedies are effectively unavailable: (1) when the grievance system

27  'operates as a simple dead end—with officers unable or consistently unwilling to provide any

28  relief to aggrieved inmates'; (2) when the system is 'so opaque that it becomes, practically

speaking, incapable of use'; and (3) 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" Eaton v. Blewett, 50 F.4th 1240, 1245 (9th Cir. 2022) (quoting Ross, 578 U.S. at 643–44). "When prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies." Andres v. Marshall, 867 F.3d 1076, 1079 (9th Cir. 2017).

In a summary judgment motion for failure to exhaust, the defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172. If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. However, "the ultimate burden of proof remains with the defendant." Id. If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by section 1997e(a). Jones, 549 U.S. at 223–24; Lira v. Herrera, 427 F.3d 1164, 1175–76 (9th Cir. 2005).

### B.      CDCR Administrative Process

During the time period at issue in this case, the CDCR provided an administrative remedy for inmates challenging "health care policies, decisions, actions, conditions or omissions that have a material adverse effect on [a prisoner's] health or welfare" Cal. Code Regs. tit. 15 § 3999.226(a) (2018). To initiate a health care grievance, a prisoner submits CDCR Form 602 HC within thirty calendar days and must "clearly and coherently" include "all information known and available to him or her regarding the issue." Id. at § 3999.227(b), (g). Moreover, "[t]he grievant shall include any involved staff member's last name, first initial, title or position, and the date(s) and description of their involvement." Id. § 3999.227(g)(1). Health care grievances are screened to identify whether they should be rejected and to ascertain whether they should be addressed as a health care staff complaint. Id. at §§ 3999.228, 3999.231(b). Health care grievances are subject to two levels of review: (1) an institutional level of review, and (2) a headquarters' level of review, which exhausts administrative remedies. Id. at § 3999.226(a)(1), (g). Rejection or withdrawal of a healthcare grievance does not exhaust administrative remedies. Id. at § 3999.226(g). To properly

14

1   exhaust administrative remedies, an inmate must receive a disposition at the headquarters' level

2   of review. Id. at § 3999.226(g).

3       **C.      Medical Staff Defendants' Motion for Summary Judgment (ECF No. 150)**

4       For the reasons set forth in the Court's prior findings and recommendations (ECF No.

5   191), the Court finds that there is a genuine dispute of material fact regarding whether Plaintiff

6   timely filed a grievance regarding his Eighth Amendment deliberate indifference to a serious

7   medical need claims against the Medical Staff Defendants. Accordingly, the Court continues to

8   recommend that summary judgment be denied. However, the Court supplements its

9   recommendation to include the following analysis regarding the Medical Staff Defendants'

10  exhaustion defense.

11      **D.      Analysis of Evidence**

12      During the evidentiary hearing, the Medical Staff Defendants presented credible testimony

13  regarding the processing of health care grievances at CSP-Corcoran in June 2019. Several defense

14  witnesses testified regarding the chain of command for a health care grievance from the time it

15  was placed in a locked grievance box to when a response was issued at the institutional level.

16  Although Plaintiff cross-examined these witnesses, he did not call into question their credibility

17  or their testimony regarding the procedures in place for the processing of health care grievances.

18  Nor did Plaintiff dispute the accuracy of the documentary evidence presented by the Medical

19  Staff Defendants during the hearing, which establishes that the grievance office at CSP-Corcoran

20  did not receive any health care grievance in 2019 concerning Plaintiff's allegations of medical

21  deliberate indifference by the Medical Staff Defendants after the use of force incident.[15]

22      As such, the Court reiterates its prior finding that the Medical Staff Defendants met their

23  initial burden of proof by showing that there was a generally available administrative remedy,

24  which Plaintiff did not pursue. See Albino, 747 F.3d at 1172 (the defendants have the initial

25  burden to prove "that there was an available administrative remedy, and that the prisoner did not

26  ---

[15] According to Plaintiff's grievance history in HCARTS, the only health care grievance Plaintiff
submitted in 2019 was received at the institutional level on December 11, 2019, months after the use of
27  force incident occurred. (See Defs. Exhibit 6A at 5–6). As the Court stated in its prior findings and
recommendations, it is undisputed that this grievance (COR HC 19001233) "did not address Plaintiff's
28  medical deliberate indifference allegations against the Medical Staff Defendants[.]" (ECF No. 191 at 11).

1   exhaust that available remedy."). The burden therefore shifted to Plaintiff "to come forward with

2   evidence showing that there is something in his particular case that made the existing and

3   generally available administrative remedies effectively unavailable to him." Id. In this regard,

4   Plaintiff challenges both the availability of the grievance process as well as the Medical Staff

5   Defendants' contention that he did not pursue the grievance process.

6          In terms of the availability of the grievance process, Plaintiff testified during the hearing

7   that he did not have access to grievance forms after the use of force incident because he was in

8   restrictive housing. (ECF No. 276 at 82, 103–04). However, no other witnesses or evidence

9   corroborate Plaintiff's testimony that grievance forms were not provided to inmates housed in

10  SHUs at CSP-Corcoran. Rather, Mr. Laber testified that he picked up grievances daily from every

11  pod in Facility 4A, including the SHUs. (ECF No. 276 at 46). Not only that, Plaintiff, himself,

12  acknowledged that he submitted a grievance form later that same month, on June 30, 2019, while

13  housed in the same unit. (ECF No. 276 at 85–86; Defs. Exhibit 8). Thus, the Court recommends

14  finding that Plaintiff failed to meet his burden of showing that the administrative remedy process

15  was not available to him.

16         Plaintiff's primary argument is that he submitted a health care grievance during third

17  watch on June 19, 2019. He also has his own purported copy (Defs. Exhibit 3) of this grievance,

18  which he offers as proof of the health care grievance. Thus, the question is whether Plaintiff's

19  testimony and Defs. Exhibit 3 is sufficient to overcome the Medical Staff Defendants' evidence.

20  For the reasons set forth below, the Court finds that they are not.

21         Plaintiff has not presented any definitive evidence establishing that he submitted a health

22  care grievance on June 19, 2019. There is no other witness or evidence to corroborate his

23  testimony that he submitted a CDCR Form 602 HC on this date. Additionally, there are a number

24  of questions and inconsistences that cast doubt on Plaintiff's version of events. While none of

25  these questions conclusively disprove Plaintiff's account, they cast considerable doubt on it.

26         Plaintiff initially identified the inmate who assisted him as Parjaro, but later identified that

27  same inmate by the name Rodriguez Moreno. When the Court questioned this change during

28  cross-examination, Plaintiff indicated that Parjaro was just a nickname, and that he now

recognizes who the inmate was based on his cell number. But Plaintiff had not provided the cell number before in his declaration. Nor had he previously indicated that Parjaro was only a nickname.

Aside from his testimony, Plaintiff's main piece of evidence is his purported copy (Defs. Exhibit 3) of the grievance. But even if the Court were to accept as true Plaintiff's account of how he prepared this copy, the copy does not serve as proof that Plaintiff in fact submitted a health care grievance on June 19, 2019. For one, Plaintiff, himself, admits that it is not a true copy of the grievance. And as Ms. Gates pointed out during the evidentiary hearing, there is no tracking number or other marking on the copy indicating that "any staff had ever touched it." (ECF No. 276 at 20). There are also issues with the copy itself. It lists the wrong year—2022, which is over three years after the use of force incident occurred and more than a year after he commenced this lawsuit. The response area on the form is also crossed out, which is something that prison officials would have done; there is no reason why Plaintiff would need to do that on his own copy. Plaintiff also claims to have submitted the copy to the Court with his pleadings, but the record does not support his claim. Finally, the fact that Plaintiff never submitted his copy or a follow-up document questioning the outcome of his grievance casts further doubt on his testimony that he submitted such a grievance.

In terms of his own credibility, while Plaintiff was never successfully impeached, he repeatedly failed to respond clearly to questions that were posed during the evidentiary hearing. For example, his description of the "line" process was particularly. Plaintiff testified that inmate Parjaro sent him scrap paper, which he wrote on and sent back by tying it to "a little piece of soap" and "shoot[ing] the line all the way" to Parjaro's cell on "the other side of the chow." (ECF No. 276 at 89). But despite questioning Plaintiff regarding this process, the Court could not understand how a piece of paper could be sent to different cells, which are presumably separated by walls, using a bar of soap. Plaintiff also did not explain why he needed Parjaro's assistance to complete the health care grievance but was able to fill out and successfully submit a use of force grievance days later without assistance. Plaintiff's familiarity with grievance procedures is well-documented in the numerous appeals that were successfully processed, both before and after the use of force incident.

Ultimately, given the uncontroverted testimony regarding the processing of health care grievances at CSP-Corcoran, the documentary evidence showing that Plaintiff did not submit any health care grievances in June 2019, and the inconsistencies in Plaintiff's version of events, the Court finds that the preponderance of the evidence supports the Medical Staff Defendants' position that Plaintiff failed to exhaust his available administrative remedies as to the Eighth Amendment claims against them.

**VI.   CONCLUSION AND RECOMMENDATION**

Accordingly, the Court renews its recommendation, as explained in ECF No. 191, that

1.   Defendants Camacho, Ibarra, Gill, Aragon, Ramadan, and Boyd's motion for summary judgment (ECF No. 150) be denied based on a genuine dispute of fact; and

The Court further recommends that:

2.   Defendants' request for judicial notice (ECF No. 268) be granted; and

3.   Plaintiff's claims against Defendants Camacho, Ibarra, Gill, Aragon, Ramadan, and Boyd be dismissed without prejudice because Plaintiff failed to exhaust his available administrative remedies as to these claims.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The objections shall not exceed more than fifteen (15) pages, including exhibits. Any response to the objections shall be served and filed within fourteen (14) days after service of the objections.

\\
\\
\\
\\
\\
\\

18

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 14, 2024**          /s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE